ALLEN MONUMENT WORKS *v.* SKORCZ.

4-5227                                              121 S. W. 2d 85

Opinion delivered November 7, 1938.

*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellant.

*E. W. Brockman,* for appellee.

GRIFFIN SMITH, C. J. The complaint alleges that Allen Monument Works is a partnership, composed of the defendants who were sued individually; that a competitor is Pine Bluff Monument Company; that in March, 1937, appellees, who were plaintiffs below, contracted with Pine Bluff Monument Company to supply two monuments to be placed on graves in the cemetery at Pine Bluff, delivery to be made about May 1; that in April, agents of Allen Monument Works called at the home of appellees, who are Bohemians and reside in Grant county, and represented that Pine Bluff Monument Company was not a going concern; that it could not deliver monuments; and that, acting upon such representations, which they believed to be true, appellees, at the instance of appellants' agents, directed a letter to Pine Bluff Monument Company cancelling the order. It is further alleged that appellants assured appellees that cancellation of the outstanding contract would be effected at no expense to appellees. The letter was given to such agents, who agreed to see that it was delivered.

Having procured the letter, appellants contracted with appellees to make and erect three gravestones or monuments, at a cost of $173. Appellees issued a check in full payment, but testified that the gravestones were to be of an agreed standard of quality and that the check was not to be cashed until appellees had inspected the work and given their approval.

It is contended by appellees that the monuments were made and placed on the graves before an opportunity had been given to inspect them; that they were not as represented, and that they undertook to return them, but appellants declined to accept them.

Evidence in behalf of appellees is that the order which it was sought to have cancelled had been placed with Lee Dunlap, of Pine Bluff Monument Company, Dunlap having called upon appellees at their home. Prior to that time neither of the appellees had met Dunlap. Appellee Mark Skorcz testified that shortly after the order was given he was in Pine Bluff on business and stopped at Allen Monument Works and asked where Dun-

lap's place of business was. He was told that Dunlap had no place of business; that at one time he was employed by Allen Monument Works, but had been discharged. Dunlap, according to the witness, had left his address with appellees, but it had been lost. Following this inquiry by Skorcz, two men representing the Allens went to the Skorcz home, and the transaction—substantially as set out in the complaint—was consummated.

The letter written for Skorcz and turned over to appellants' agents for delivery to Pine Bluff Monument Company was: "Mr. Lee Dunlap, Pine Bluff, Arkansas. Dear Sir: On Tuesday of this week I went to Pine Bluff and failed to locate you, and I learned that you did not have a place of business as you stated. You may consider this my final cancellation, as I have made other arrangements for the monuments. Yours truly, Mark Skorcz."

The letter was written by one of the men representing appellants, but was signed by Skorcz. There was other testimony relating to comments made by the agents touching upon the character and alleged unreliability of Dunlap, all of which, according to Mark Skorcz, was accepted as true; and acting under apprehensions thus created, they entrusted the letter to such agents.

Appellees learned later that the letter was not delivered to Dunlap before appellants completed the work and cashed the check.

Mrs. Lydia Ashby, bookkeeper for appellants, testified that appellees [mother and son] came to the office of Allen Monument Works to ascertain if the monuments were ready to be set. Witness could not find a contract. Appellees told her the agent who took the order told them that they could come in and see the material, "because it is the only monument works in town." Witness says she told appellees that when Mr. Allen came in a salesman would be directed to call upon them. Nothing was said about Dunlap—no inquiry made as to his whereabouts.

Jack Allen, one of the appellants, testified that in response to information received from Mrs. Ashby he called upon appellees and talked with them about the

monuments. "They said they wanted one rather quickly —within three or four days. I agreed to supply the monuments at a specified time, and put all of the terms in a written agreement. I told the plaintiffs that I could not fill their order until their other order had been cancelled. I wrote the letter at the request of Mark Skorcz, and he signed it. I brought the letter to town, addressed an envelope, and placed it in the regular mail box on the Saturday we returned."

Other testimony of a similar nature was introduced in favor of appellants.

For reversal appellants argue that plaintiffs' Instruction No. 1 is erroneous. Specific objection was made that the instruction was not confined to issues presented by the pleadings . . . "in that the complaint made no mention of a failure of consideration as a ground for recovery." The instruction is:

"If you find by a preponderance of the evidence that the agents of the defendants sold to the plaintiffs certain monuments as alleged in the complaint, and as part of the consideration agreed with the plaintiffs that the defendants would procure the cancellation of a certain contract for the purchase of monuments from the Pine Bluff Monument Company with no expense to the plaintiffs, and that the defendants have failed to obtain a cancellation of said contract, and that the plaintiffs sustained damages by reason of such failure, if any, then your verdict will be for the plaintiffs for such sum as you may find from the evidence they were compelled to expend, if any, by reason of the failure of the defendants to obtain a cancellation of the contract with the Pine Bluff Monument Company."

Appellants say: "As a matter of fact, the language used in the complaint clearly limits the case to a tort action and omits any issue of contract. . . . The plaintiffs set forth the amount of their damage and the reasons therefor as follows: 'That by reason of the fraudulent, false, and deceitful representations knowingly made by the defendants, the plaintiffs sustained damages in the sum of $173.' . . . There is no mention made that

the plaintiffs suffered damages as a result of a failure of consideration and of the defendants' failure to procure the cancellation of a certain contract.''

We cannot agree with appellants that the complaint was not sufficiently comprehensive to justify Instruction No. 1. But, even though the contention were true, the complaint will be treated as having been amended to conform to the testimony, subject to the limitation that a new or different cause of action could not be presented over objections of appellants.

It is alleged that as a consideration for making the contract, appellants agreed to have the prior contract cancelled. This agreement was in the nature of a condition precedent. It is true the complaint does not, by express language, allege that cancellation of the old contract was a part of the consideration for the new agreement, but the effect is clear. The complaint does allege a breach of contract.

Appellants' Instructions Nos. 11 and 13 submitted the contract theory to the jury. Therefore, appellants are in no position to complain that Instruction No. 1 was erroneous.

There are no errors in the record, and the judgment must be affirmed. It is so ordered.